UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JESSE R. JONES, | Case No.: 1:19-cv-00109-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent, | |

Before the Court is Petitioner Jesse R. Jones's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's denial of benefits under the Social Security Act. This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On August 14, 2017, Jesse R. Jones ("Petitioner") protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 2, 2017.  This claim was initially denied on December 12, 2017 and, again, on reconsideration on February 8, 2018.  On February 27, 2018, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ").  On August 22, 2018, ALJ Stephen Marchioro held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Taylor Mossman, appeared and testified.  William J. Tysdal, an impartial vocational expert, also appeared and testified at the same August 22, 2018 hearing.

**MEMORANDUM DECISION AND ORDER - 1**

On October 29, 2018, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council and, on March 6, 2019, the Appeals Council denied Petitioner's Request for Review, making the ALJ's Decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner filed the instant action on April 3, 2019, arguing that "[t]he decision denying Petitioner's claim is not in accordance with the purpose and intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with the evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner is disabled from performing substantial gainful activity."  Pet. for Review, p. 2 (Dkt. 1).  In particular, Petitioner claims that the ALJ (1) "erred at step three of the five-step process when he determined Petitioner did not meet Listing 11.02"; (2) "failed to support his treatment of the medical opinions with substantial evidence and ignored the opinions of Veteran's Administration doctors"; (3) "dismissed Petitioner's statement as inconsistent with the record without providing clear and convincing reasons"; and (4) "erred when he determined an RFC which was not supported by substantial evidence."  Pet.'s Brief, pp. 7-19 (Dkt. 11).  Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings.  *See id*. at p. 19; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  *See* 42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of*

*Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The standard is fluid and

nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v.*

*Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to

determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony

(*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex.*

*rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences

logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing

court may not substitute its judgment or interpretation of the record for that of the ALJ. *See*

*Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will be reversed or remanded for legal error. *See Matney*, 981 F.2d at 1019. The

ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis

in law. *See id.* However, to be clear, reviewing federal courts "will not rubber-stamp an

**MEMORANDUM DECISION AND ORDER - 3**

administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  <u>DISCUSSION</u>

### A.     **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  *See* 20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  *See* 20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since January 2, 2017, the alleged onset date."  (AR 22).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it

**MEMORANDUM DECISION AND ORDER - 4**

significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner has the following medically determinable impairments:  "degenerative disc disease status post two cervical spine surgeries, migraine headaches, depression, anxiety/panic disorder, and somatic symptom disorder."  (AR 23).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *See id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  *See* (AR 23-25).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  *See* 20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant

**MEMORANDUM DECISION AND ORDER - 5**

work is work performed within the last 15 years or 15 years prior to the date that disability must

be established; also, the work must have lasted long enough for the claimant to learn to do the

job and be engaged in substantial gainful activity.  *See* 20 C.F.R. §§ 404.1560(b), 404.1565,

416.960(b), 416.965.  On this point, the ALJ concluded:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b) except he can only frequently
> climb ramps and stairs, balance, stoop, kneel, and crouch; he can
> only occasionally climb ladders, ropes, or scaffolds; he can only
> occasionally crawl; he can occasionally reach overhead with his
> bilateral upper extremities; he can only frequently handle and finger
> with the left upper extremity; he is limited to a work environment
> with no more than a moderate noise level as defined by the Selective
> Characteristics of Occupations; he can only occasionally be exposed
> to vibration; he must avoid all exposure to unguarded moving
> mechanical parts, unprotected heights, and flashing/strobe lights; he
> is limited to work that consists of only simply, routine tasks; he can
> tolerate only occasional changes in the workplace; and he can only
> occasionally interact with the public.

(AR 25-26).

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of his impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th

Cir. 1993).  Here, the ALJ found that Petitioner "is unable to perform any past relevant work,"

but that, considering Petitioner's age, education, work experience, and RFC, there are jobs that

exist in significant numbers in the national economy that Petitioner can perform, including mail

clerk, routing clerk, and collator operator.  *See* (AR 35-36).  Thus, the ALJ concluded that

Petitioner "has not been under a disability, as defined in the Social Security Act, from June 2,

2017, through the date of this decision."  (AR 26) (internal citation omitted).

**MEMORANDUM DECISION AND ORDER - 6**

**B.     Analysis**

Petitioner contends that the ALJ erred by (1) failing to conclude at the third step of the sequential process that Petitioner did not meet a listed impairment; (2) improperly weighing the medical opinions; (3) improperly contesting his credibility; and (4) assigning him an RFC not supported by substantial evidence.  *See* Pet.'s Brief, pp. 7-19 (Dkt. 11).  Each issue is addressed below.

1.     <u>The ALJ Erred in Evaluating Petitioner's Migraine Headaches at Step Three of the Sequential Process</u>

As discussed above, an ALJ must evaluate a claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three [of the sequential process], and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs."  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).  "To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment most like the claimant's impairment."  *Tackett*, 180 F.3d at 1099 (internal quotations omitted, emphasis removed); *see also* 20 C.F.R. § 404.1526.

A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his impairments meet or equal a particular Listing.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant is alleging equivalency to a Listing, the claimant must proffer a theory, plausible or otherwise, as to how his combined impairments

equal a Listing.  *See Lewis*, 236 F.3d at 514.  Though a claimant's burden to establish, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis*, 236 F.3d at 512.  However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the Listing if the ALJ adequately summarizes and evaluates the evidence. *See Gonzalez*, 914 F.2d at 1200-01; *Lewis*, 236 F.3d at 512.

Here, the ALJ found that Petitioner's migraines were a severe impairment at step two of the sequential process, but nonetheless concluded that they neither met nor equaled a listed impairment, stating only:

> In connection with the claimant's headaches, I have considered [Listing] 11.00 concerning neurological impairments.  After reviewing the medical evidence, the claimant's condition does not meet the [L]isting for that body system.

(AR 24).  Petitioner contends this was improper, arguing that his migraines should have been evaluated against Listing 11.02, not against Listing 11.00 – and that his migraines equal Listing 11.02B. *See* Pet.'s Brief, pp. 9-11 (Dkt. 11) ("Because the ALJ failed to provide any analysis regarding Petitioner's migraines meeting or equaling the appropriate [L]isting, he committed reversible error.").  The undersigned generally agrees.

Migraines are not a specifically-listed impairment, but the Social Security Administration ("SSA") identifies Listing 11.02 (Epilepsy) as the most closely analogous to primary headache disorders.  Migraines are included in such disorders and may, alone or in combination with another impairment, medically equal a Listing. *See* SSR 19-4p: *Titles II and XVI:  Evaluating Cases Involving Primary Headache Disorders*, available at 2019 WL 4169635 (Aug. 26, 2019); *see also Rader v. Comm'r of Soc. Sec.*, 2018 WL 4087988, *4 (D. Idaho 2018) ("Thus, the SSA

**MEMORANDUM DECISION AND ORDER - 8**

provides specific guidance regarding the applicability of Listing 11.02 to the step three medical

equivalence analysis for migraine headaches.  Given this, it is no surprise that an ALJ's failure to

specifically consider Listing 11.02 constitutes legal error when a claimant's migraine headaches

were found to be a severe impairment at step two.") (citations omitted).  The SSA's SSR 19-4p

provides an ALJ with instructions to determine whether a claimant's migraines are equal in

severity and duration to the criteria in Listing 11.02B:

> Paragraph B of [L]isting 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.  To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider:  a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, available at 2019 WL 4169635 at *7.  Petitioner submits that the medical record

demonstrates that his migraines meet or equal Listing 11.02B.  *See* Pet.'s Brief, pp. 10-11 (Dkt.

11) (discussing cause, diagnosis, frequency, and treatment of Petitioner's migraines, stating:

"Here, Petitioner had objective evidence as a cause of his migraines, sought frequent treatment

with a neurologist, took medication as prescribed, and suffered lengthy migraines at least once or

twice per week for several years, therefore, he equals Listing 11.02B.").

Without disputing Petitioner's position that the ALJ did not engage in any analysis

surrounding Listing 11.02, Respondent implies that this is because Petitioner did not allege that

he satisfied the Listing at the August 22, 2018 hearing.  *See* Respt.'s Brief, pp. 5-6 (Dkt. 13).  It

**MEMORANDUM DECISION AND ORDER - 9**

is true that the ALJ need not discuss every Listing; and it may be harmless error if the ALJ

neglected to discuss relevant evidence at step three of the sequential process, provided the Court

can confidently say "that no reasonable administrative factfinder, following the correct analysis,

could have resolved the factual matter in any other way." *Williams v. Berryhill*, 2018 WL

2234902, *3 (D. Utah 2018) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

But here, the ALJ found Petitioner's migraine headaches to be a severe impairment based upon

the record and facts of the case.  That, coupled with the SSA's above-referenced direction on

analyzing migraine headaches vis à vis Listing 11.02, establishes that the ALJ erred in evaluating

Petitioner's migraine headaches at step three of the sequential process by not considering Listing

11.02.  *See Woolf v. Saul*, 2019 WL 4580037, *6-7 (D. Idaho 2019) (rejecting respondent's

argument that petitioner failed to offer plausible theory or otherwise allege his migraines met

listed impairment during administrative hearing where petitioner argued on appeal "that one

impairment – migraines – met the requirements for a listed impairment, and for which the

[SSA's Programs Operations Manual Systems (POMS)] manual expressly provided an

example.") (citing *Rader*, 2018 WL 4087988 at *7).[1]  Said another way, Petitioner's migraine

---

[1]  Respondent separately argues that *Rader* is distinguishable from this action because, in *Rader*, (1) the ALJ "neither mentioned the claimant's severe migraines in his step three review, nor mentioned the applicable Listing"; and (2) there was no evidence (as is the case here) of employment during the relevant period "to negate any assertion that the claimant met or equaled a Listing and therefore was unable to perform any gainful activity."  Respt.'s Brief, pp. 6-7 (Dkt. 13).  These arguments are not convincing.  First, whether an ALJ considers migraines or not is not dispositive of the issue; here, the error lies in the ALJ's failure to compare Petitioner's migraine headaches against Listing 11.02, not in failing to compare them at all.  Second, equivalence depends on medical evidence only; age, education, and work experience are irrelevant.  *See* 20 C.F.R. § 404.1526(c).  Therefore, while the "nuts and bolts" of working at less than substantial gainful levels during the relevant period may help inform the issue of whether a claimant meets or equals a Listing, that fact alone does not altogether obviate the need to analyze whether that is indeed the case.  Otherwise, according to Respondent, the entirety of the ALJ's actual analysis at step three would be superfluous and unnecessary.  The Court is not aware of such an absolute consideration within the sequential process (which would effectively disregard step three) and is not willing to stake such ground now.

**MEMORANDUM DECISION AND ORDER - 10**

headaches were not an unknown; they were well understood and, when determined to be a severe

impairment, should have been assessed under the proper Listing.

Hence, the ALJ should have discussed whether Petitioner's migraine headaches met the

requirements of Listing 11.02.[2]  It was error not to do so and remand on this issue is thus

warranted.

       2.      The ALJ Improperly Evaluated the Medical Opinions

As an initial matter, the regulations applicable to cases filed before March 27, 2017 set

out a hierarchy for treatment of medical opinion evidence – consistent with Ninth Circuit case

law – in which more weight was generally given to the opinion of a treating doctor than to an

examining doctor, and more weight to the opinion of an examining doctor than to a non-

examining doctor.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R.

§§ 404.1527, 416.927.  This hierarchy underpinned the requirement in the Ninth Circuit that an

ALJ must provide clear and convincing reasons to reject an uncontradicted doctor's opinion and

specific and legitimate reasons where the record contains a contradictory opinion.  *See Murray v.*

*Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1983).

However, for claims filed on or after March 27, 2017 (like Petitioner's), new regulations

apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *See*

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed.

---

[2] The undersigned recognizes that "[a]n adjudicator's articulation of the reason(s) why
the individual is or is not disabled at a later step in the sequential evaluation process will provide
rationale that is sufficient for a subsequent reviewer or court to determine the basis for the
finding about medical equivalence at step [three]."  SSR 17-2p:  *Titles II and XVI:  Evidence*
*Needed By Adjudicators At The Hearings and Appeals Council Levels Of The Administrative*
*Review Process To Make Findings About Medical Equivalence*, available at 2017 WL 3928306,
* 4 (March 27, 2017).  This possibility implicates the Court's consideration of Petitioner's
additional arguments, including the ALJ's evaluation of the medical opinions and Petitioner's
credibility, which the Court addresses below.  *See infra*.

Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations eliminate the hierarchy of medical opinions and provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . .  including those from [the claimant's] medical sources." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  *See* 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors and, thus, the ALJ is required to explain how both factors were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

>   (1)   *Supportability*.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

>   (2)   *Consistency*.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other  medical sources and nonmedical sources in the claim, the

more  persuasive the medical opinion(s) or prior administrative
medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to,

explain how the other factors were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings

"about the same issue are both equally well-supported . . . and consistent with the record . . . but

are not exactly the same," the ALJ must explain how "the other most persuasive factors" were

considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

"The Ninth Circuit has not yet stated whether it will continue to require an ALJ to

provide 'clear and convincing' or 'specific and legitimate' reasons for rejecting medical

opinions, given the Commissioner's elimination of the hierarchy formerly used for considering

medical opinions.  *Tina T. v. Comm'r of Soc. Sec.*, 2020 WL 4259863, *4 (W.D. Wash. 2020).

But, as stated above, "[t]he Commissioner's new regulations still require the ALJ to explain his

or her reasoning, and to specifically address how he or she considered the supportability and

consistency of the opinion."  *Id*; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"Obviously the ALJ's reasoning must remain legitimate, meaning lawful or genuine, as it must

still be supported by substantial evidence and free from legal error[.]"  *Tina T.*, 2020 WL

4259863 at *4.

With these standards in mind, Petitioner argues that "the ALJ's Decision was not

supported by substantial evidence when he determined that the Consultative Examiner's opinion

was persuasive and the treating providers' opinions were not persuasive."  Pet.'s Brief, p. 11

(Dkt. 11).  Petitioner's focus in this respect is on the ALJ's consideration of his November 21,

2017 physical consultative examination with Michael Spackman, M.D., at which time Dr.

Spackman provided the following "functional assessment" for Petitioner:  "Based on the above-

**MEMORANDUM DECISION AND ORDER - 13**

orthopedic/neurologic information and my physical exam today, I recommend restrictions in the light range with occasional postural limitations.  No specific [upper extremity] limitations."  (AR 1883).  The ALJ found that Dr. Spackman's "findings . . . are persuasive and are supported by the overall medical and non-medical evidence in the record, as well as by the findings and conclusion in this Decision."  (AR 30).

Against the new regulations now applicable to Petitioner's claim (*see supra*), the undersigned is less convinced.  In crediting Dr. Spackman's opinion, the ALJ effectively rejected other, differing, medical opinions.  Yet, the generalized reasons the ALJ provided to resolve such evidentiary conflict in Dr. Spackman's favor are not immediately clear.  For example, it can be argued that the ALJ sufficiently addressed the "supportability" of Dr. Spackman's opinions when he noted that "[t]he limitation with respect to being able to lift and carry light objects and manipulate small objects is well supported by the observable signs and laboratory findings contained in [Dr. Spackman's] examination findings."  (AR 30).  But the same cannot be said for the ALJ's description of the "consistency" of Dr. Spackman's opinions.  That is, stating simply that Dr. Spackman's "findings were generally consistent with the treatment provider's medical records," without specifically discussing the consistency of such findings with the rest of the record, does not make it so.  *Id*. ("I conclude that [Dr. Spackman's opinions] are persuasive and supported by the overall medical and non-medical evidence of record."); *see also* (AR 29) ("Other inconsistencies between the claimant's self-reports and findings on examination can be found in the diagnostic evidence.").  Nowhere within the ALJ's actual assessment of Dr. Spackman's opinion is there any citation to the medical record that separately supports Dr. Spackman's adopted conclusions.  *See* (AR 29-30).[3]  This is not to say that such evidence does

_____

[3]  The ALJ's general recounting of the medical record leading up to his assessment of Dr. Spackman's opinions rarely included specific citations to treatment records, relying instead on

**MEMORANDUM DECISION AND ORDER - 14**

not exist, only that the ALJ did not properly incorporate those records when speaking to the

"consistency" of Dr. Spackman's opinions.  *See, e.g.*, *Connett v. Barnhart*, 340 F.3d 871, 874

(9th Cir. 2003) (error for district court to affirm ALJ's credibility decision "based on evidence

[ALJ] did not discuss" and "specific facts or reasons" ALJ did not assert.").

        Then, in a manner which illustrated the fact that the medical record does *not* consistently

support Dr. Spackman's opinions, the ALJ discussed and rejected the opinions from medical

specialists who treated Petitioner over a period of years.  The ALJ summarily described the

opinions of Petitioner's neurosurgeon (who performed Petitioner's two neck fusions), R. Tyler

Frizzell, M.D., and the treating neurologist, Allen Hahn, M.D., as amounting to general

discussions of Petitioner's health without any specific functional limitation findings.  *See* (AR

28-29) ("[Dr. Frizzell's March 7, 2017] letter simply generally discusses the claimant's physical

health conditions, and then concludes that they are permanent and are all directly connected to

damage to the cervical spine.  [Dr. Han] also provided a letter that did not include any specific

functional limitations and simply generally discussed the claimant's reported issues that were

treated by him. . . .   To the extent that the foregoing findings are considered opinion evidence, I

find them to be not persuasive.  The findings are simple statements of generality and not specific

functional limitation findings.  The findings are not persuasive.").  But the ALJ's single-

paragraph discussion about these providers omits several findings that do not neatly align with

Dr. Spackman's opinions.[4]

---

general citations to whole exhibits (some over hundreds of pages long).  *See* AR (26-30).
Therefore, the task of determining the consistency of Dr. Spackman's opinions is challenging.

    [4]  Respondent argues that, "[b]ecause neither letter contains the requisite findings to
qualify as a medical opinion, the ALJ adequately explained why they were not persuasive . . . .
[without] warrant[ing] a detailed discussion of the supportability and consistency factors, much
less the remaining three persuasive factors."  Respt.'s Brief, p. 12 (Dkt. 13) (internal citations
omitted).  The undersigned disagrees, given that the letters from Drs. Frizzell and Han can be

**MEMORANDUM DECISION AND ORDER - 15**

For example, Dr. Frizzell stated:

> The purpose of this letter is to document the significant and chronic health conditions that impair activities of daily living for Mr. Jones. As a result of lesion to his cervical spine caused by bone spurs resulting from his service-connected injury, Mr. Jones struggles with the following significant health impairments:
>
> - Severe migraine level cervicogenic headaches occurring at least once a week;
>
> - Urinary urgency resulting in sleep loss;
>
> - Spasticity of the arms/legs including painful cramping and spasms resulting in sleep loss;[5]
>
> - Weakness/numbness in arms and legs;
>
> - Consistent and often severe pain in the cervical spine/neck; and
>
> - Sexual dysfunction.
>
> These conditions are all directly connected to the damage to Mr. Jones's cervical spine and are permanent.

(AR 3124).

Similarly, Dr. Han explained that a standard form outlining Petitioner's abilities to simply walk, sit, lift, and carry would be inadequate to explain Petitioner's difficulties with maintaining employment, clarifying further that:

---

understood as speaking (albeit generally) to Petitioner's abilities in light of his impairments. *See* 20 C.F.R. § 404.1513(a)(2). The ALJ didn't disagree. *See* (AR 28-29) ("To the extent that the foregoing findings are considered opinion evidence . . . .").

[5] This cuts against the ALJ's claim (when considering Dr. Spackman's opinion) that Petitioner's treatment history never included references to jerking motions. *See* (AR 29-30) ("I note that . . . [there was] never any significant reports by those treatment providers that the claimant demonstrated any jerking motions or that he had a frequent need to randomly stand up for a moment before sitting down again. . . . Also, the claimant's jerking motions (never noted before or after this one time consultative examination) and positive Waddell's signs may suggest an intentional overstatement of his limitations.").

**MEMORANDUM DECISION AND ORDER - 16**

I would provide the following summary of your medical condition, especially with regard to how they interfere with your ability to perform work-related activities.

I last saw you in follow-up neurological evaluation on 7/17/18 regarding your headaches and neck pain.  As you know, you have chronic migraine headaches and neck pain.  you have modest to moderate daily headaches.  In addition, you have 1-2 severe headaches per week.  In addition, you have chronic neck pain and you have had two or more neck surgeries and evidence of spinal cord atrophy on MRI.  You have had increased neck and shoulder pain following a motor vehicle accident in August 2017 when you sustained a whiplash type injury to your neck.

Your headaches and neck pain are exacerbated by increased stiffness in your neck resulting from driving to work.  In addition, fluorescent lighting in the school where you worked exacerbated your migraine headaches.

In addition to chronic migraine headaches and neck pain, you have other medical issues that may well impact your ability to work.  However, those other issues are not neurological and would not be addressed by me.

(AR 3125).

The ALJ correctly noted that these opinions do not speak specifically to Petitioner's physical limitations.  *See supra* (citing (AR 28-29)).  At the same time, however, the ALJ agreed with these opinions to the extent he acknowledged that Petitioner's degenerative disc disease and migraine headaches represent severe impairments that limit Petitioner's ability to perform basic work activities.  *See* (AR 23).  Accordingly, these opinions alongside corroborating medical evidence in the balance of the record call into question the ALJ's elevation of Dr. Spackman's opinions over nearly everyone else, including the Compensation and Pension Examination performed by John Dudek, M.D., on April 6, 2017.

Like Dr. Spackman, Dr. Dudek examined Petitioner.  Unlike Dr. Spackman, Dr. Dudek also reviewed the medical record (including records from Drs. Frizzell and Han).  *Compare* (AR 590), *with* (AR 1881).  Dr. Dudek noted Petitioner's abnormal gait due to left leg clumsiness,

**MEMORANDUM DECISION AND ORDER - 17**

increased deep tendon reflexes in both upper and lower extremities, and mild left upper and

lower extremity weakness. *See* (AR 592-94). Dr. Dudek opined:

> All the symptoms below the arms are due to the myelopathy.
> Symptoms in the upper extremities cannot be separated because in
> addition to the myelomalacia at C5/6, he had severe bilateral neural
> foraminal stenosis at the C5-6 level, which causes a radiculopathy.
>
> Veteran's headaches are due to the DDD/DJD of the cervical spine,
> not the myelomalacia. Veteran's bladder issues are due to the
> myelomalacia. Veteran's intermittent numbness of the genital
> region with sexual dysfunction is due to the myelomalacia.

(AR 595). Dr. Dudek concluded that Petitioner's disorders impact his ability to work because

the Petitioner is left only with "sedentary employment with limited required walking." (AR

597). This conclusion, drawn from an examination and a review of the medical record, conflicts

directly with Dr. Spackman's opinion and necessarily speaks to the (in)consistency and lack of

persuasiveness of Dr. Spackman's opinion. Notably, this was not addressed by the ALJ, as the

ALJ did not discuss Dr. Dudek's examination or opinion.[6]

Similar disconnects are found in the ALJ's consideration of Petitioner's possible mental

health limitations. For example, Petitioner's treating psychiatrist, Alison Krause, M.D.,

completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" on

January 11, 2018, concluding that Petitioner had (1) moderate limitations in understanding,

remembering, and carrying out simple instructions, but (2) marked limitations in the ability to

---

[6] Respondent argues that the ALJ was not required to address Dr. Dudek's opinion because the new regulations find VA disability ratings neither persuasive nor valuable and eliminate the need for the ALJ to consider VA decisions. *See* Respt.'s Brief, p. 15 (Dkt. 13) (citing 20 C.F.R. § 404.1520b(c)(1)-(3)). But this only extends to the question of disability as that issue is reserved for the Commissioner; it does not foreclose consideration of the evidence supporting any such decision. *See, e.g.*, (AR 27) (ALJ stating: "However, the VA disability rating will not be reviewed at length as it is considered neither valuable nor persuasive under the regulations. *The medical and other evidence underlying the VA disability rating has, however, been fully considered.*") (emphasis added). Except the ALJ failed to acknowledge Dr. Dudek's opinion at all.

**MEMORANDUM DECISION AND ORDER - 18**

make judgments on simple and complex work-related decisions; understanding, remembering,

and carrying out complex instructions; interacting appropriately with the public, supervisors, and

co-workers; and responding appropriately to usual work situations and to changes in a routine

work setting.  *See* (AR 1980-81).  Dr. Krause further opined:

> [Petitioner] has frequent migraines that impede his ability to work, drive, and function in his role as a parent.  The pain is debilitating – forcing him to limit stimulation (noise, light) and renders him unable to perform his professional duties.  Additionally, the environment/conditions of his workplace themselves exacerbate his symptoms (fluorescent lights, having to stand, etc.) – making work a vicious cycle.
>
> . . . .
>
> Without medication, [Petitioner] experiences migraine headaches multiple times a week (each episode lasts hours-days).  With medication, his headache frequency is lessened, but there are medication side effects (grogginess, etc.) that also interfere with his ability to lead a class and teach.
>
> . . . .
>
> Ability to interact fully with and function as the primary parent of his toddler, Christopher [is affected].  Due to cervical injuries, his range of motion is limited, and if he attempts to match his son's activity level while playing with him or in the course of other general parenting duties, he has pain that lasts for days.
>
> . . . .
>
> Migraine headaches, light/noise sensitivity, chronic pain, depression [are factors that support the assessment].  [Petitioner] has struggled greatly to reconcile his desire to teach and be "productive" with the reality of his physical limitations.  This has led to severe depression and occasional suicidal ideation.

*Id.*

The ALJ rejected these opinions as unpersuasive, saying that such limitations were

"excessive" and "not supported by the overall medical evidence of record or the claimant's rather

robust activities or daily living and part time work activity at an SVP 8 job."  (AR 33).[7]  But,

---

[7]  The ALJ went on to say:  "How the claimant might have worked as a part time college instructor from the alleged onset date in January to 2017 until November 2017, on top of his

again, the ALJ provided no references to any specific treatment notes when critiquing Dr.

Krause's opinions,  In the absence of a more detailed analysis, it is unclear which aspects of Dr.

Krause's challenged opinions are inconsistent with which records, such that it is also unclear

which parts of the opinions were discounted and why.

Regardless, on the issue of consistency, Dr. Krause's opinions do not exist in isolation.

In an April 11, 2017 C & P [(Compensation and Pension)] Mental Health Review Examination,

Ann Trotter, PhD., diagnosed Petitioner with major depressive disorder secondary to chronic

pain, opining that Petitioner's "current level of impairment was moderate with occupational and

social impairment with reduced reliability and productivity."  (AR 587-88).  Likewise, following

a November 21, 2017 consultative examination, Michael Emery, Ph.D., opined that Petitioner

was markedly impaired in social functioning and moderately impaired in general adaptation.  *See*

(AR 1888).  But, as with Dr. Dudek, the ALJ did not discuss Dr. Trotter's opinions at all (*see*

*supra*); and, as with Dr. Krause, the ALJ appears to have discounted Dr. Emery's opinions

without explanation as to how these opinions are inconsistent with and unsupported by the

evidence or the clinical findings – especially where the medical record is represented by Dr.

Krause's treatment notes/findings themselves.

It is axiomatic that the Court does not resolve the at-issue conflicting opinions and

ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the

Social Security regulations.  Rather, the Court decides whether there is support in the record for

the ALJ's decision that Petitioner is not disabled.  Here, the record has conflicting medical

---

child care responsibilities, with marked limitation in 8 of 10 mental aspects of functioning is
unexplained by Dr. Krause."  (AR 33).  Except Dr. Krause prefaced her opinions by
acknowledging that, at baseline, Petitioner "is a highly intelligent and 'functional' individual"
and that "his intelligence is a protective factor, without which impairment may appear *more
extreme*."  (AR 1980) (emphasis added).  In this sense, then, Petitioner's treatment history with
Dr. Krause allowed her to reconcile these seemingly divergent aspects of Petitioner's condition.

**MEMORANDUM DECISION AND ORDER - 20**

opinions, but having carefully reviewed the ALJ's October 29,2018 Decision, the Court is unable to conclude whether the ALJ's decision to discount the above opinions is supported by substantial evidence. Remand on this issue is thus warranted as well.

      3.    <u>Petitioner's Credibility</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

As described *supra*, the ALJ erred in his assessment of certain medical opinions. Hence, the Court will not address issues surrounding Petitioner credibility in any great depth, considering that the ALJ's credibility determination is necessarily tethered to the medical record.

**MEMORANDUM DECISION AND ORDER - 21**

*See, e.g.*, (AR 34-35) (ALJ stating:  "The treatment notes, examination findings, and objective diagnostic testing results simply do not support the degree of limitation that the claimant alleges. . . .  The overall medical evidence of record demonstrates that the claimant has medical issues affecting his ability to physically and mentally function.  However, the functional restrictions alleged by the claimant are disproportionate to the clinical findings in the medical evidence of record.").  Suffice it to say, for the reasons described in this decision, the evidentiary landscape for questioning Petitioner's credibility has changed.  Therefore, remand is also appropriate in this respect.

        4.     <u>Petitioner's RFC</u>

The ALJ determined that Petitioner retains the RFC to perform light work with certain limitations.  *See* (AR 25).  Petitioner argues that the ALJ erred at step 5 of the sequential process when he failed to include all of Petitioner's functional limitations in the RFC.  *See* Pet.'s Brief, p. 18 (Dkt. 11).  Because the Court remands the ALJ's findings for other reasons (e.g. whether Petitioner's migraine headaches meet a listed impairment, the weighing of medical opinions, and Petitioner's credibility), the ALJ should again consider the effects of Petitioner's impairments on remand and discuss their impact, along with a renewed assessment of the medical opinions and Petitioner's credibility, on Petitioner's RFC.  So, while not specifically remanding the issue of Petitioner's RFC based on the argument Petitioner raises here, the practical effect of remanding other issues may ultimately affect Petitioner's RFC on remand.

## IV.  <u>CONCLUSION</u>

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational

interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ.  *See Key*, 754 F.2d at 1549.

In this case, however, there was not a proper consideration by the ALJ of Petitioner's migraine headaches.  Additionally, the reasons given by the ALJ for rejecting certain medical opinions are not properly supported, potentially affecting the ALJ's credibility determination, and RFC.  This case is therefore remanded for reconsideration for the reasons described in this decision.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: November 30, 2020

Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**